UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTOR LEBRON,

                              Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

                              Defendant.[1]

No. 20-CV-9543 (KMK) (PED)

ORDER ADOPTING REPORT & RECOMMENDATION

---

Appearances:

Christopher James Bowes, Esq.
Law Office of Christopher James Bowes, Esq.
Shoreham, NY
*Counsel for Plaintiff*

Daniella Marie Calenzo
Social Security Administration – Office of the General Counsel
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

    Victor Lebron ("Plaintiff") brings this Action against the Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge ("ALJ") to deny Plaintiff's application for a period of disability and disability insurance benefits on the ground that Plaintiff is not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 423, et seq. (*See* Compl. (Dkt. No. 1).) On November 16, 2020, the Court referred the case to Magistrate Judge Paul E. Davison ("Judge

---

[1] As Judge Davison's Report and Recommendation noted, Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted for former Commissioner Andrew Saul as the Defendant in this Action, pursuant to Federal Rule of Civil Procedure 25(d).

Davison") pursuant to 28 U.S.C. § 626(b)(1)(A). (*See* Dkt. No. 5.) Plaintiff and Defendant both moved for judgment on the pleadings. (*See* Dkt. Nos. 17, 19.) On March 18, 2022, Judge Davison issued a Report and Recommendation ("R&R") recommending that the Court deny Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Motion") and grant Defendant's Cross-Motion for Judgment on the Pleadings ("Defendant's Motion"). (*See* R&R 22 (Dkt. No. 22).) After receiving an extension, Plaintiff filed an Objection to the R&R on April 20, 2022, (*see* Pls.' Obj. to the R&R ("Pl.'s Obj.) (Dkt. No. 25)), and Defendant filed a Response on May 2, 2022, (*see* Def.'s Resp. to Pl.'s Obj. ("Def.'s Resp.") (Dkt. No. 26)). For the reasons discussed below, the Court adopts the result recommended in the R&R and overrules Plaintiff's Objection.

I. Discussion

A. Standard of Review

1. Review of a Report and Recommendation

A district court addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are

2

not clearly erroneous or contrary to law." *Rogers v. Astrue*, 895 F. Supp. 2d 541, 547 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)(2)). "[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onandaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (citation omitted); *see also Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (refusing to consider objections filed one day late). Moreover, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review [of the magistrate's recommendations]." *Belen v. Colvin*, No. 14-CV-6898, 2020 WL 3056451, at *2 (S.D.N.Y. June 9, 2020) (alteration, citation, and italics omitted); *see also George v. Pro Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 434 (S.D.N.Y. 2016) (same).

2. Review of a Social Security Claim

In evaluating a social security claim, the reviewing court does not determine for itself whether the plaintiff was disabled and therefore entitled to social security benefits. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e do not substitute our judgment for the agency's, or determine de novo whether the claimant was disabled." (citations, quotation marks, alterations, and italics omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Accordingly, a court may overturn an ALJ's determination only if it was "'based upon legal error'" or "'not supported by substantial evidence.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)); *see also Cage*, 692 F.3d at 122 ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." (alteration in original) (quoting *Moran v.*

3

*Astrue*, 569 F.3d 108, 112 (2d Cir. 2009))). "Substantial evidence, however, is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rosa*, 168 F.3d at 77 (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (same). In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, [the] claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity [("RFC")] to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The claimant bears the burden of proof for the first four steps. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If, however, the claimant proves that his impairment prevents him from performing his past

4

work, the burden shifts to the Commissioner at the fifth step. *See id.* There, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002). If the ALJ determines that a "significant number of jobs exist in the national economy that the claimant can perform," *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), the ALJ must deny disability insurance benefits to the clamant, *see* 20 C.F.R. § 404.1520(a)(4)(v).

B.  Analysis

The Court adopts the recitation of facts set forth by Judge Davison in the R&R, (*see* R&R 2–12), except where specifically noted below, and assumes the Parties' familiarity with the R&R. The Court will repeat only those facts relevant to the consideration of Plaintiff's Objection.

Plaintiff asserts one Objection to Judge Davison's R&R. (*See generally* Pl.'s Obj.) Specifically, he asserts that Judge Davison incorrectly concluded that the ALJ properly considered the impact of Plaintiff's neuropathy by discounting the result of an Electromyography/Nerve Conduction Study ("EMG/NCS test") and the opinion of Dr. Kevin Weiner ("Dr. Weiner") regarding that test. (*See id.* at 3–6.) Defendant argues that Judge Davison properly determined that the ALJ correctly evaluated the results of the EMG/NCS test, and that any error on the ALJ's part in evaluating the EMG/NCS test was harmless. (Def.'s Resp. 2–5.) The Court agrees with Defendant.

As Judge Davison observed in the R&R, the ALJ evaluated the severity of Plaintiff's neuropathy at steps two and four of the aforementioned five steps required to evaluate Plaintiff's Social Security claim. (*See* R&R 17–19.) At step two, the ALJ determined that Plaintiff "has the following severe impairments: Hodgkin's lymphoma status post chemotherapy; degenerative disc disease of the lumbar and cervical spine; left carpal tunnel syndrome; right shoulder

impairment; left knee impairment; and obesity status post gastric bypass procedure." (ALJ Op. 15 (Dkt. No. 12).)[2]  As Judge Davison reasoned, "[b]ecause Plaintiff's neuropathy was a result of his chemotherapy, the ALJ appropriately considered it as a symptom of Plaintiff's chemotherapy and as such, included it in the determination that Plaintiff's status post chemotherapy was a severe impairment." (R&R 17.)  Indeed, Plaintiff acknowledges in his objection that his neuropathy was "chemotherapy-induced." (Pl.'s Obj. 3.)  It therefore follows that Plaintiff's neuropathy would fall into the category of conditions that Plaintiff developed post-chemotherapy, which the ALJ found to constitute a severe impairment.  (*See* ALJ Op. 15.)

However, even if the ALJ did not sufficiently consider Plaintiff's neuropathy as part of his determination that Plaintiff's Hodgkin's lymphoma status post chemotherapy was a severe impairment, "[t]he failure to address a condition at step two will constitute harmless error, and therefore not warrant remand, if, after identifying other severe impairments, the ALJ considers the excluded conditions or symptoms in the subsequent steps and determines that they do not significantly limit the plaintiff's ability to perform basic work." *Rodriguez v. Saul*, No. 19-CV-9066, 2021 WL 738348, at *12 (S.D.N.Y. Feb. 25, 2021) (citations omitted); *see also Shapiro v. Saul*, No. 19-CV-8161, 2021 WL 140863, at *17 (S.D.N.Y. Jan. 8, 2021) (citation omitted)(same), *report and recommendation adopted sub nom. Shapiro v. Comm'r of Soc. Sec.*, 2021 WL 797949 (S.D.N.Y. Feb. 26, 2021); *Eralte v. Colvin*, No. 14-CV-1745, 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (same) (citing *Reices–Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because [the excluded conditions] were considered during the

---

[2] The ALJ's Opinion can be found on pages 13 through 27 of the Social Security Administration File ("SSA File"), which can be found at Dkt. No. 12.  When referring to the ALJ Opinion and the larger SSA File, the Court refers to the page numbers in the bottom right corner of the page.

6

subsequent steps, any error was harmless.")).  The ALJ did just that by considering the impact of Plaintiff's neuropathy at step four of the analysis.

The crux of the Parties' dispute involves the ALJ's consideration of Plaintiff's neuropathy at step four, when he evaluated Plaintiff's RFC.  (*Compare* Pl.'s Obj. *with* Def.'s Resp.)  As the R&R noted, the ALJ considered Plaintiff's testimony in which he described experiencing neuropathy, Plaintiff's diagnostic test, and the opinions of several doctors regarding Plaintiff's neuropathy.  (*See* R&R 18–21.)  First, the ALJ noted that the Plaintiff testified during his hearing that he suffered from neuropathy affecting his hands and feet.  (*See* ALJ Op. 20.)  Second, the ALJ considered two appointments that Plaintiff had with Dr. David Straus ("Dr. Straus") in November 2017 and March 2018.  (*Id.* at 21.)  During the November 2017 appointment, Plaintiff "described some neuropathy of his fingers and toes with minimal and only occasional effect on functioning."  (*Id.*)  The record from Plaintiff's March 2018 follow-up with Dr. Straus indicates that Plaintiff continued to have "persistent peripheral neuropathy in his fingers and toes."  (*Id.*)

Third, the ALJ considered the EMG/NCS test, which was conducted in May 2018.  Plaintiff argues that the ALJ "completely disregarded" the findings of the EMG/NCS test.  (Pl.'s Obj. 5; *see also id.* 3–4.)  The Court disagrees.  The ALJ's Opinion contains two statements about the EMG/NCS test.  The first statement reads that the EMG/NCS test showed "some findings suggestive of neuropathy."  (ALJ Op. 21 (citing SSA File 449).)  The second statement reads, "The nerve conduction study showed involvement of only right radiculopathy whereas the claimant endorsed neuropathy of the hands and feet."  (ALJ Op. 23.)  Plaintiff is incorrect that the ALJ "completely disregarded" the results of that test, given that the ALJ acknowledged earlier in his Opinion that the test showed "some findings suggestive of neuropathy."  (*Id.* at 21.)

7

However, the Court notes that the two statements are inconsistent with one another. To the extent that the ALJ's second statement misstates the record, though, "this misstatement is nothing more than harmless error," because, as the Court will discuss below, the ALJ's RFC analysis is "otherwise supported by substantial evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 n.34 (N.D.N.Y. 2009); *see also Kennedy H. v. Comm'r of Soc. Sec.*, No. 17-CV-247, 2018 WL 10086334, at *13 n.4 (N.D.N.Y. Aug. 29, 2018) ("While this appears to be a misstatement on the ALJ's part, the [c]ourt finds any error to be harmless because she provided other reasons within her credibility analysis which were supported by substantial evidence."); *Davis v. Berryhill*, No. 17-CV-6168, 2018 WL 1980251, at *8 (W.D.N.Y. Apr. 27, 2018) ("[T]he [c]ourt finds that any error by the ALJ in this regard to be harmless because the remainder of the ALJ's . . . assessment is well supported by other substantial evidence in the record.").

The ALJ next considered Dr. Julian Elliot's opinion in September 2018 "that the claimant could not walk long distances or carry objects for . . . long periods of time due to neuropathy." (ALJ Op. 24.) However, the ALJ concluded that he was "not persuaded by this opinion because it is vague, without defining long distance or weight of objects that cannot be carried for long periods of time." (*Id.*) Similarly, the ALJ considered Dr. Weiner's opinion in August 2019 that Plaintiff "was disabled due to neuropathy." (*Id.*) However, the ALJ also found this opinion unpersuasive "because it is wholly inconsistent with the record as a whole, including relatively minor abnormalities on diagnostic studies and physical examinations, as well as the claimant's treatment history showing significant improvement and general stability of his conditions as well as robust activities of daily living." (*Id.*)

8

"[A]n ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by substantial evidence in the record and are not the product of legal error." *Ferreras-Matos v. Comm'r of Soc. Sec.*, No. 20-CV-7106, 2021 WL 7287630, at *18 (S.D.N.Y. Nov. 15, 2021) (collecting cases), *report and recommendation adopted*, 2022 WL 292921 (S.D.N.Y. Jan. 31, 2022); *see also Wilbert D. v. Comm'r of Soc. Sec.*, No. 20-CV-1318, 2022 WL 3320826, at *4 (W.D.N.Y. Aug. 11, 2022) (same). Indeed, "[a]n ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record." *Torbicki v. Berryhill*, No. 17-CV-386, 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018); *Villalobo v. Saul*, No. 19-CV-11560, 2021 WL 830034, at *14 (S.D.N.Y. Feb. 9, 2021) (same). Moreover, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." *Negron v. Saul*, No. 19-CV-7547, 2021 WL 465768, at *28 (S.D.N.Y. Feb. 8, 2021) (quoting *Schaal v. Apfel*, 134 F. 3d 496, 504 (2d. Cir 1998)), *report and recommendation adopted*, 2021 WL 1254426 (S.D.N.Y. Apr. 5, 2021).

Having reviewed the record, the Court finds that the ALJ appropriately weighed the conflicting medical evidence. As discussed, the ALJ considered Plaintiff's testimony, as well as the opinions of Dr. Straus and Weiner regarding Plaintiff's neuropathy. However, the November 2017 report from Dr. Straus, which found that Plaintiff did have neuropathy, also indicated that Plaintiff's neuropathy only "minimally [and] occasionally affects functioning." (SSA File 275.) And as Judge Davison points out, "the record also shows that different doctors observed that Plaintiff did *not* have neuropathy, or that his neuropathy did not interfere with his functioning." (R&R 19 (emphasis added).) For example, Plaintiff's medical record contains doctor or nurse's notes reading "no neuropathy" for visits on March 8, 2018; April 4, 2017; April 18, 2017;

9

October 26, 2018; May 31, 2019; July 6, 2018; February 15, 2019; and August 30, 2019. (SSA File 376, 395, 525, 535, 550, 576, 596, 600.) During a doctor's visit on June 18, 2019, the notes also reflect that Plaintiff was "feeling great[,] [having] no issues, [and] walking often." (*Id.* at 530.) Additionally, Plaintiff's testimony supports the ALJ's conclusion that Plaintiff engages in "robust activities of daily living." (ALJ Op. 24.) For example, Plaintiff testified that he gets himself up, gets dressed, takes a shower, walks his two dogs, participates in childcare, participates in grocery shopping, assists his wife with her knee surgeries, and takes trips to Florida and Massachusetts. (SSA File 63–66.) The record also supports that Plaintiff goes out and socializes with friends. (*Id.* at 410, 421.)

Thus, the Court agrees with Judge Davison that the ALJ's decision is supported by substantial evidence. (R&R 19.) The Court therefore overrules Plaintiff's Objection and finds that the ALJ properly considered Plaintiff's neuropathy in denying Plaintiff's Social Security claim.

## II. Conclusion

For the foregoing reasons, the Court adopts Judge Davison's R&R, denies Plaintiff's Motion for Judgment on the Pleadings, and grants Defendant's Motion for Judgment on the Pleadings. The final decision of the Commissioner is affirmed. The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 17, 19) and close this case. SO ORDERED.

Dated: August 31, 2022
       White Plains, New York

_____
KENNETH M. KARAS
United States District Judge